**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

PENNY ANN W.,

        Plaintiff,

 - v -            Civ. No. 5:17-CV-1122
                  (DJS)
NANCY A. BERRYHILL, *Acting Comm'r of Soc. Sec.*,

        Defendant.

**APPEARANCES:**        **OF COUNSEL:**

OLINSKY LAW GROUP       HOWARD D. OLINSKY, ESQ.
Counsel for Plaintiff
300 S. State Street
Suite 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.    JAMES DESIR, ESQ.
OFFICE OF REG'L GENERAL COUNSEL
 - REGION II
Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

**DANIEL J. STEWART**
**United States Magistrate Judge**

## DECISION and ORDER[1]

Currently before the Court, in this Social Security action filed by Penny Ann W. against the Commissioner of Social Security pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion for Judgment

---

[1] Upon Plaintiff's consent, the United States's general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. *See* Dkt. No. 6 & General Order 18.

on the Pleadings. Dkt. Nos. 11 & 14. For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is **granted**, Defendant's Motion for Judgment on the Pleadings is **denied**, and the matter is remanded for further proceedings.

## I. RELEVANT BACKGROUND

### A. Background

Plaintiff was born on October 20, 1977. Dkt. Nos. 8 & 8-1, Admin. Tr. ("Tr."), p. 52.[2] She completed high school, and has past work as an assembler, office manager, and property manager. Tr. at pp. 54, 57, & 78. Plaintiff alleges a disability onset date of June 11, 2013. Tr. at p. 270.

Plaintiff originally filed her claim for Supplemental Security Disability and Disability Insurance Benefits on September 8, 2014, alleging schizophrenia, bipolar disorder, border line personality disorder, anxiety, depression, eating disorder, asthma, diabetes, and pacreatitis. Tr. at pp. 270 & 301. Plaintiff's application was denied on October 20, 2014, and Plaintiff requested a hearing, which was held before Administrative Law Judge ("ALJ") David J. Begley on October 21, 2016. Tr. at pp. 84-85; Tr. at pp. 47-83. Plaintiff was represented by counsel and testified at the hearing. Tr. at pp. 47-83. On February 16, 2017, ALJ Begley issued an unfavorable decision finding Plaintiff not disabled. Tr. at pp.12-36. On August 14, 2017, the Appeals Council concluded there was no basis to review the ALJ's

---

[2] Due to the length of the administrative transcript, it is contained in two docket entries, with consecutive bates stamp page numbering that continues between the two entries. As they contain consecutive page numbering, they will both be referred to as "Tr." herein, along with the corresponding bates stamped page number.

decision, thus rendering the ALJ's decision the final decision of the Commissioner. Tr. at pp. 1-6. This action followed.

## B. The ALJ's Decision

In his determination, ALJ Begley found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2016, and had not engaged in substantial gainful activity since June 11, 2013, the alleged onset date. Tr. at p. 18. He found that Plaintiff had the following severe impairments: diabetes mellitus, pancreatitis, alcohol dependence, bipolar disorder, asthma, and neuropathy. Tr. at p. 18. The ALJ found that Plaintiff's mild degenerative disc disease, history of Guillain-Barre syndrome ("GBS"), gastroesophageal reflux disease, hypokalemia, gastritis, acute hemorrhagic shock, acute appendicitis status post appendectomy, and a history of an eating disorder were nonsevere, because they did not impose more than a minimal restriction on Plaintiff's ability to perform basic work activities or because they did not persist at a severe level for a continuous period of twelve months. Tr. at pp. 18-19. The ALJ considered any effect that these non-severe impairments might have on Plaintiff's ability to function when formulating her residual functional capacity ("RFC"). Tr. at p. 19. He next found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, specifically considering Listings 3.02, 3.03, 11.14, 12.04, 12.06, and 9.00B5. Tr. at pp. 19-22.

The ALJ next found that, based on all of Plaintiff's impairments, she had the RFC to

perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant may never climb; may occasionally balance, stoop, kneel, crouch, and crawl; requires a hand held assistive device to stand and ambulate; must avoid concentrated exposure to irritants such as fumes, odors, dust, gases and poorly ventilated areas; must avoid slippery and uneven surfaces as well as hazardous machinery, unprotected heights and open flames; is limited to simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements involving only simple, work-related decisions and few, if any, work place changes; and may have occasional interaction with coworkers, supervisors and the general public.

Tr. at pp. 22-30. The ALJ next found that Plaintiff is unable to perform any past relevant work, pursuant to the testimony of a vocational expert ("VE"). Tr. at p. 30. The ALJ recounted that Plaintiff was 35 years old, which is defined as a younger individual age 18-44 on the alleged disability onset date, that she has at least a high school education and is able to communicate in English, and that transferability of job skills is not an issue because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. Tr. at pp. 30-31. The ALJ then found that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, based on the testimony of a VE. Tr. at p. 31.

### C. The Parties' Briefings on Their Cross-Motions

In her brief, Plaintiff first contends that the RFC is not supported by substantial evidence because the ALJ failed to rely on a medical opinion when assessing Plaintiff's physical limitations. Dkt. No. 11, Pl.'s Mem. of Law, pp. 8-11. Plaintiff contends that there is no medical opinion in the record on Plaintiff's physical limitations from an acceptable

source, and that without such an opinion or treatment notes containing assessments of Plaintiff's RFC, it was improper for the ALJ to form an RFC as to Plaintiff's physical limitations. *Id.* Plaintiff also contends that the ALJ failed to develop the record in regards to Plaintiff's GBS. *Id.* at pp. 11-14. Plaintiff argues that the ALJ erroneously found Plaintiff's GBS to be nonsevere, and ignored relevant evidence regarding the impairment; Plaintiff contends the ALJ failed to obtain further information from a physician, although the record was highly ambiguous regarding Plaintiff's neurological impairments. *Id.* Plaintiff therefore contends that the ALJ failed to develop the record regarding this impairment, and further, that the ALJ mischaracterized evidence and arbitrarily determined that Plaintiff's symptoms were attributable to peripheral neuropathy. *Id.*

In response, Defendant contends that the record is devoid of evidence showing that Plaintiff's GBS caused more than a minimal impact on Plaintiff's functioning during the relevant period, and that the ALJ considered evidence of Plaintiff's neurological functioning throughout his decision in any event. Dkt. No. 14, Def.'s Mem. of Law, pp. 5-6. Defendant contends that Plaintiff was represented by an attorney and should have identified or submitted any relevant documentation demonstrating severity, and that, in any event, because the ALJ proceeded past step two of the sequential analysis, any error at step two would be harmless. *Id.* at p. 6. In response to Plaintiff's claim that the ALJ's RFC is not supported by substantial evidence, Defendant contends that the RFC was appropriate without a medical opinion because the record contained sufficient evidence for the ALJ to assess Plaintiff's

RFC, including diagnostic, clinical and examination findings, and Plaintiff's daily activities. *Id.* at pp. 7-9.

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520 & 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers

such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III. ANALYSIS

#### A. Whether the RFC is Supported by Substantial Evidence

Plaintiff first contends that the RFC is not supported by substantial evidence because the ALJ failed to rely on a medical opinion when assessing Plaintiff's physical limitations that result from her lower extremity impairments. Pl.'s Mem. of Law at pp. 8-11. Plaintiff contends that there is no medical opinion in the record regarding Plaintiff's physical limitations from an acceptable source, and that without such an opinion or treatment notes containing assessments of Plaintiff's RFC, it was improper for the ALJ to form an RFC. *Id.*

A claimant's RFC is "the most [she] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1) & 416.945(a)(1).

> Although "[t]he RFC determination is reserved for the commissioner . . . an ALJ's RFC assessment is a medical determination that must be based on probative evidence of record. . . . Accordingly, an ALJ may not substitute h[is] own judgment for competent medical opinion." *Walker v. Astrue*, No. 1:08CV00828(RJA)(JJM), 2010 WL 2629832, at *6 (W.D.N.Y. June 11, 2010) (internal citations and quotation marks omitted) (quoting *Lewis v. Comm'r of Soc. Sec.*, No. 6:00CV1225(GLS), 2005 WL 1899399, at *3 (N.D.N.Y. Aug. 2, 2005)). In that regard, "[t]he record must have more than mere medical findings: [A]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence."

*Barnes v. Berryhill*, 2018 WL 1225542, at *4 (D. Conn. Mar. 9, 2018). As such, "[w]here the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate these diagnoses to specific residual functional capacities such as those set out in 20 C.F.R. § 404.1567(a) . . . [the Commissioner may not] make the connection himself." *Walker v. Astrue*, 2010 WL 2629832, at *6 (W.D.N.Y. June 11, 2010) (internal quotation marks omitted) (citation omitted); *see also Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010) ("Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of a supporting medical opinion has improperly substituted his own opinion for that of a physician. . .").

There are limited circumstances in which it may be proper for an ALJ to make an RFC determination without a functional assessment from an acceptable medical source. First, "where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment." *Walker v. Astrue*, 2010 WL 2629832, at *7 (quoting *Manso-Pizarro v. Sec. of*

*Health and Human Servs.*, 76 F.3d 15, 17 (1st Cir. 1996)); *see also Lewis v. Colvin*, 2014 WL 6609637, at *6 (W.D.N.Y. Nov. 20, 2014). In addition, where "the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required[.]" *Monroe v. Comm'r of Soc. Sec.*, 676 Fed. Appx. 5, 8-9 (2d Cir. 2017) (internal quotation marks and internal citation omitted) (summary order); *see also Pellam v. Astrue*, 508 Fed. Appx. 87, 90 (2d Cir. 2013) (summary order) (finding ALJ's RFC was supported by substantial evidence where ALJ had all of the claimant's treating physician's treatment notes and consulting examining physician's opinion, which largely supported ALJ's assessment of RFC). Thus, if there is either extensive evidence demonstrating a claimant's functional capacity, or if the evidence demonstrates that the resulting functional impairment is very limited, it may be proper for an ALJ to draw his or her own functional assessment.

This is not a case where the evidence shows that Plaintiff's physical impairments would have a very limited impact on her functional abilities. *See Hernandez v. Comm'r of Soc. Sec.*, 2015 WL 275819, at *2 (N.D.N.Y. Jan. 22, 2015). Rather, there is evidence of Plaintiff attending the hospital in February and March of 2015 due to sudden onset of weakness in the lower extremities (Tr. at p. 1325-29) and receiving four days of hospital treatment for weakness and numbness in her lower extremities in May of 2015, with followup at a neuromuscular clinic (Tr. at pp. 1087-1114); other treatment notes indicate weakness and problems with her lower extremities in April of 2015 (Tr. at p. 1355); and

Plaintiff's medical records often indicate weakness or other limitations in her lower extremities (Tr. at pp. 1354-55, 1125, 1223, & 1429).  As such, there was medical evidence in the record demonstrating that Plaintiff may have significant physical impairments due to her weakness in her lower extremities; the ALJ therefore was not at liberty to make a determination as to her RFC on the basis that the raw medical records clearly demonstrate that Plaintiff's physical impairments are not limiting.

In addition, the evidence of record does not contain analysis demonstrating the functional implication of Plaintiff's conditions, from which the ALJ may have been able to determine Plaintiff's functional abilities.  Rather, it is unclear on what the ALJ based the conclusion that Plaintiff is able to, for example, occasionally balance, stoop, kneel, crouch, and crawl.  Tr. at p. 22.  The treatment notes in the record are bare medical findings, which do not indicate Plaintiff's physical limitations or functional capacity.  "The record [ ] contains neither a physical RFC assessment nor a medical source statement pertaining to plaintiff's physical capabilities, let alone one from a treating source." *Lawton v. Astrue*, 2009 WL 2867905, at *16 (N.D.N.Y. Sept. 2, 2009).  "Indeed, the only opinion as to [Plaintiff's] physical limitations was provided by [ ] a non-treating, non-examining agency employee who does not qualify as an acceptable medical source."  *Gross v. Astrue*, 2014 WL 1806779, at *18-19 (W.D.N.Y. May 7, 2014) (collecting cases finding that agency consultants are not acceptable medical sources and that RFC assessments by such individuals are not entitled to weight); *see also Lawton v. Astrue*, 2009 WL 2867905, at *17.  Indeed, the ALJ notes that

Plaintiff's treatment notes are "somewhat ambiguous regarding her functional status." Tr. at p. 24. These potential conflicts or inconsistencies in the medical record provide even more reason that the ALJ should have obtained an opinion from a treating physician or consultative examiner as to Plaintiff's physical functional abilities.

Here, the ALJ "ma[de] a residual functional capacity determination based on medical reports that do not specifically explain the scope of claimant's work-related capabilities." *Woodford v. Apfel*, 93 F. Supp. 2d 521, 529 (S.D.N.Y. 2000). "Because there is no medical source opinion supporting the ALJ's finding that [Plaintiff] can perform sedentary work, the court concludes that the ALJ's RFC determination is without substantial support in the record[.]" *House v. Astrue*, 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013) (remanding for further proceedings).

### B. Whether the ALJ Failed to Develop the Record in Regard to Plaintiff's Neurological Impairments

Plaintiff contends that the ALJ failed to develop the record in regards to Plaintiff's GBS, which Plaintiff alleges rendered her paralyzed from the waist down, and caused her to have decreased strength in the lower extremities. Pl.'s Mem. of Law at pp. 11-14. Plaintiff argues that the ALJ erroneously found Plaintiff's GBS to be nonsevere, and ignored relevant evidence regarding the impairment, and failed to obtain further information from a physician; Plaintiff additionally contends that the ALJ mischaracterized evidence and arbitrarily determined that Plaintiff's symptoms were attributable to peripheral neuropathy. *Id.*

As discussed above, the Court is remanding this matter because the record is underdeveloped regarding the functional implications of Plaintiff's weakness in her lower extremities. "As a general rule, where the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations . . . , to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing." *Gross v. Astrue*, 2014 WL 1806779, at *19 (quotation marks omitted) (citation omitted); *see also Lawton v. Astrue*, 2009 WL 2867905, at *16. As such, in failing to obtain a medical opinion as to Plaintiff's RFC, the ALJ failed to fully develop the record. In analyzing Plaintiff's physical limitations due to her impairments in her lower extremities and in developing the record regarding this on remand, the ALJ should consider evidence regarding the severity of Plaintiff's GBS.

## IV. CONCLUSION

For the reasons stated herein, it is hereby

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings (Dkt. No. 14) is **DENIED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff benefits is **VACATED** and **REMANDED** pursuant to Sentence Four of section 405(g) for further proceedings; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order upon the parties to this action.

Date: December 19, 2018
 Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge